UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ASHOK VYAS, on behalf of
himself and others who are
similarly situated,

      Plaintiff,                   Case No.: _____

vs.

HOLMAN AUTOMOTIVE GROUP, INC.  a
New Jersey corporation, and HOLMAN
AUTOMOTIVE, INC., a Florida corporation,
together doing business as BMW OF
PEMBROKE PINES, and MELINDA K.
"MINDY" HOLMAN, individually and as
Chairman and Director of HOLMAN
AUTOMOTIVE GROUP, INC.  and HOLMAN
AUTOMOTIVE, INC.,

      Defendants.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

      Plaintiff ASHOK VYAS, on behalf of himself and others who are similarly situated, sues the Defendants HOLMAN AUTOMOTIVE GROUP, INC. a New Jersey corporation and HOLMAN AUTOMOTIVE, INC., a Florida corporation, together doing business as BMW OF PEMBROKE PINES, and MELINDA K. "MINDY" HOLMAN, and alleges:

      1.    Plaintiff VYAS brings this action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, et seq., ("the ADEA"); under Title VII of the U.S. Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., ("Title VII"); and under the Florida Civil Rights Act, §§760.01-760.11, Florida Statutes, ("FCRA").

2.     Plaintiff asks the Court to remedy intentional discrimination against him by the Defendants because of the Plaintiff's age, gender, and national origin, as well as the Defendants' unlawful retaliation against the Plaintiff for opposing their unlawful employment practices.

3.     Plaintiff VYAS further asks the Court to remedy intentional discrimination and retaliation by the Defendants against other former and present employees of the Defendants who are similarly situated to the Plaintiff by certifying a collective action under the ADEA and by providing such relief as is authorized by each of the above statutes to those who consent to join this action as party plaintiffs.

## THE PARTIES

4.     Defendant HOLMAN AUTOMOTIVE GROUP, INC. is a corporation organized under the laws of the state of New Jersey, with its principal office address at 4001 Leadenhall Road, Mt. Laurel, New Jersey 08054.  At all material times HOLMAN AUTOMOTIVE GROUP, INC. was and, at present, is doing business in Florida and in other states.

5.     At all times hereinafter mentioned the said Defendant was engaged in an industry affecting commerce, to wit: selling, leasing, financing and servicing automobiles manufactured in various states and/or imported from outside the United States.  At all material times the said Defendant had and, at present, has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

2

6.      At all material times the Defendant HOLMAN AUTOMOTIVE GROUP, INC. was, and is, an "employer" within the meaning of 29 U.S.C. §630(a) and (b), 42 U.S.C. §2000e(b), and §760.02(7), Florida Statutes.

7.      Defendant HOLMAN AUTOMOTIVE, INC. is a Florida corporation, which is and, at all material times, was affiliated with HOLMAN AUTOMOTIVE GROUP, INC. HOLMAN AUTOMOTIVE, INC. has the same principal office address as HOLMAN AUTOMOTIVE GROUP, INC. at 4001 Leadenhall Road, Mt. Laurel, New Jersey 08054, The Defendants are engaged in integrated business operations and have certain corporate officers and directors in common.

8.      At all times hereinafter mentioned HOLMAN AUTOMOTIVE, INC. was engaged in an industry affecting commerce, to wit: selling, leasing, financing and servicing automobiles manufactured in various states and/or imported from outside the United States.  At all material times the said Defendant had and, at present, has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

9.      At all material times the Defendant HOLMAN AUTOMOTIVE, INC. was, and is, an "employer" within the meaning of 29 U.S.C. §630(a) and (b), 42 U.S.C. §2000e(b), and §760.02(7), Florida Statutes.

10.      The business operations of HOLMAN AUTOMOTIVE GROUP, INC. and HOLMAN AUTOMOTIVE, INC. were and are interrelated, conducted with centralized control of labor relations, common management and common ownership or financial

3

control.    The Defendants therefore constitute an integrated enterprise and a single employer under the ADEA, Title VII and FCRA.

11.    At all times hereinafter mentioned HOLMAN AUTOMOTIVE GROUP, INC. and HOLMAN AUTOMOTIVE, INC. were, and are, engaged in new and used car sales, leasing, financing and servicing at various locations throughout the United States including a location at 14800 Sheridan Street, Pembroke Pines, Florida 33331 where the said Defendants were and are doing business as BMW OF PEMBROKE PINES.

12.     Defendant MELINDA K. "MINDY" HOLMAN is and, at all material times, was the Chairman and a Director of HOLMAN AUTOMOTIVE GROUP, INC. and the Chairman and a Director of HOLMAN AUTOMOTIVE GROUP, INC.

13.    Ms. HOLMAN personally acted directly and indirectly in the interests of the corporate Defendants with respect to their unlawful employment practices and with respect to the particular complaints and allegations raised by the Plaintiff ASHOK VYAS during his employment.

14.    The Plaintiff ASHOK VYAS, is a resident of the state of Florida, residing at. 13845 NW 20th Street, Pembroke Pines, Florida 33028.   At all times hereinafter mentioned Plaintiff VYAS was at least forty (40) years of age and within the age group protected by the ADEA.

15.    Plaintiff's race and ethnicity is East Indian.    He practices the Hindu religion.  Plaintiff was born in Uganda, East Africa in 1953 where his father was serving as a career diplomat.  Plaintiff is a British subject who emigrated to the United States from Great Britain and subsequently became a citizen of the United States.

Law Offices of Donald R. McCoy • 111 SE 12th Street, Fort Lauderdale, FL 33316 • (954) 618-6575

16.     Defendants hired Plaintiff VYAS on or about October 17, 2016. Plaintiff was employed by the Defendants at their BMW dealership in Pembroke Pines, Florida, for approximately six (6) years.   He was primarily engaged in selling and leasing automobiles to the Defendants' retail customers.   His job title was "Pre-Owned Client Advisor."

17.     Defendants unlawfully fired Mr. VYAS on or about June 16, 2022, for reasons prohibited by federal and state law, as alleged below.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction of this action under the ADEA, specifically under 29 U.S.C. §§626(b) and (c) and under 29 U.S.C. §216(b) of the Fair Labor Standards Act which the ADEA incorporates by reference.   The Court has jurisdiction of Plaintiff's Title VII claims under 42 U.S.C. §2000e-5(f)(3).   The Court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. §1367.

19.     Venue lies in the Southern District of Florida because the unlawful employment practices alleged in this Complaint were committed within the state of Florida and the Plaintiff resides in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.     On or about December 13, 2022, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") which was also filed with the Florida Commission on Human Relations ("FCHR") pursuant to §760.11(1), Florida Statutes.

21.     Plaintiff filed amended charges on or about January 11, 2023 and January 15, 2023.  His charges alleged and substantiated the matters set forth in this Complaint.

22.     On August 6, 2023, the EEOC sent the Plaintiff a "Determination and Notice of Rights" authorizing him to file a civil action upon his charges.   Plaintiff is authorized under §760.11(4), Florida Statutes, to bring a civil action under the Florida Civil Rights Act because the FCHR did not issue any determination within 180 days of the date of filing his charges,

23.     All conditions precedent to this action have been met or were waived.

### COLLECTIVE ACTION ALLEGATIONS

24.     The provisions of the ADEA are to be enforced in accordance with the powers, remedies, and procedures provided in the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, et seq. ("the FLSA"), including those in §216(b), and in accordance with 29 U.S.C. §626(c).

25.     Under 29 U.S.C. §626(b) any act prohibited by 29 U.S.C. §623 of the ADEA shall be deemed to be a prohibited act under §215 of the FLSA.  Amounts owing as a result of a violation of the ADEA are deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of §§216 and 217 of the FLSA.  Liquidated damages are payable in cases of willful violations.

26.     Under these provisions the Court has jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of the ADEA, including, without limitation, entry of judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts payable under the ADEA.

6

27.     The FLSA provides at 29 U.S.C. §216(b) that an action to recover the liability prescribed therein may be maintained against any employer "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

28.     Certain of the Defendants' unlawful practices which discriminated and retaliated against Plaintiff ASHOK VYAS also affected, and are affecting, other present and former employees of the Defendants who were and are similarly situated within the meaning of 29 U.S.C. §216(b).

29.     Plaintiff asks the Court to conditionally certify this action as a collective action under the ADEA and to authorize the Plaintiff to distribute a notice of an opt-in class to other similarly situated employees and former employees of the Defendants to inform them of their right to consent to become parties to this action.

## FACTS COMMON TO ALL COUNTS

30.     Plaintiff ASHOK VYAS was employed by the Defendants at their BMW dealership at 14800 Sheridan Street, Pembroke Pines Florida 33331, from on or about October 17, 2015, through on or about June 16, 2022.

31.     Defendants were and are engaged at that location, and throughout the country, in selling, leasing, financing and servicing automobiles produced by various manufacturers, including without limitation, BMW (Bayerische Moteren Werke AG) .

32.     Plaintiff ASHOK VYAS is and was fully qualified for his position as "Pre-Owned Client Advisor."  He had many years of experience and training in the business

of automotive sales. He met all stated requirements for his position and satisfactorily performed the responsibilities of his position at all times.

33.     For much of his employment at Defendants' Pembroke Pines BMW dealership Plaintiff was consistently among the top salesmen in terms of monthly sales. He regularly received favorable performance reviews from Defendants' managers. His clients, many of whom returned as repeat customers to purchase or lease additional automobiles from Mr. VYAS, gave him high ratings and favorable comments on Defendants' internet site.

34.     Defendants paid the Plaintiff a commission on each car he sold. His earnings were entirely dependent upon his sales performance. For much of his employment Plaintiff consistently sold from fifteen to twenty cars each month, on average.

35.     Plaintiff and others who were similarly situated were subjected to discrimination and unlawful retaliation by the actions and omissions of certain members of Defendants' management, in particular the general manager of BMW of Pembroke. Pines, Jeffrey Duecker, and Andrew J. "A.J." Bose, an assistant manager in the used car sales department, who was subsequently promoted to used car manager.

36.     These managers consistently favored persons who were substantially younger than the Plaintiff and others in the protected age group in terms of hiring, promotion and, in particular, the distribution of "Sales Opportunities" or sales leads among members of the sales team.

Law Offices of Donald R. McCoy • 111 SE 12th Street, Fort Lauderdale, FL 33316 • (954) 618-6575

37.     Plaintiff VYAS and certain other senior salesmen complained to management in good faith that by routing the majority of sales leads to younger sales persons, A.J. Bose was negatively affecting their sales and, in turn, their earnings.  As a result many of them were having to work extra hours and weekends in order to maintain an adequate number of car sales each month.

38.     Plaintiff's complaints in this regard led directly to the termination of his employment.

39.     On or about June 17, 2022, Mr. VYAS was notified via an email message from Jane Garofalo, Defendants' Manager and Business Partner/Human Resources, that his employment was terminated.   Plaintiff VYAS was on an approved leave of absence at the time, for medical reasons.

40.     The week before he was fired, on or about June 9, 2022, Mr. VYAS submitted a detailed written complaint to the general manager, Jeffrey Duecker, concerning the used car sales manager A.J. Bose.

41.     His complaint alleged ongoing age discrimination against himself and against others who are and were similarly situated.   He also described threats of retaliation to which he and others had been subjected because they had opposed the Defendants' discriminatory practices.

42.     On June 8, 2022, Mr. Bose confronted the Plaintiff regarding his previous complaints of age discrimination and harassment.  Among other things Mr. Bose told the Plaintiff that he was going to "fix [the Plaintiff's] wagon" and that  "now you will realize what a hostile working environment really is."

43.     Plaintiff's complaint to Mr. Duecker on June 9, 2022, described these threats and how A.J. Bose had continued to discriminate against Mr. VYAS and other salesmen in the protected age group, some of whom he named.

44.     Among other things, Mr. Bose continued routing the majority of internet sales leads to younger salesmen, despite management's assurances this practice would cease.

45.     The Defendants maintain a website on the internet where potential customers can express their interest in a particular make and model in each dealership's inventory.   Sales opportunities also are referred to Holman through several other internet platforms where the company advertises, such as autotrader.com and CarFax.

46.     On these interactive websites potential customers can indicate their interest in a particular make or model in the dealership's inventory. Timely follow-up by Holman's sales team is an essential part of the dealership's sales effort.

47.     While he was an assistant manager at the Defendants' Pembroke Pines location, A.J. Bose, manipulated these referrals to favor younger salesmen to the detriment of Mr. VYAS and those members of the sales team who were of similar age.

48.     Defendants hired Mr. Bose shortly after he completed college.  Plaintiff is informed and believes that Mr. Bose was in his mid—twenties when he was hired.

49.     Unlike Mr. VYAS, A.J. Bose had little or no experience in automotive sales. He completed Defendants' management training program and was promoted to the position of assistant sales manager for pre-owned vehicles.

50.     As assistant manager and after he was promoted to manager, A.J. Bose systematically discriminated by consistently hiring younger, inexperienced salesmen in their twenties and thirties.   Mr. VYAS personally referred several persons in his age group to Holman for available vacancies, individuals who had considerable sales experience.  None of them was even afforded an interview.

51.     Plaintiff is informed and believes, and therefore alleges, that other well-qualified sales personnel in the protected age group applied for management positions similar to the position Mr. Bose held and were rejected, while those who were substantially younger and inexperienced were promoted to management.

52.     During his employment, Plaintiff himself applied for an advertised management position with Holman and was told the position was not available.

53.     Plaintiff VYAS complained about age discrimination to Mr. Bose and to his superiors, including General Manager Jeffrey Duecker, several times.  They did nothing, however, to address his concerns.   Likewise, his concerns were not taken seriously by Holman's local HR manager, Jane Garofalo, who refused to conduct a serious investigation of his complaints and those of others in the protected age of others in the protected age group.

54.     After attempting to get Jeffrey Duecker and Jane Garofalo to address his complaints of discrimination and retaliation, Mr. VYAS met personally with MELINDA K. "MINDY" HOLMAN, the Chairman and a Director of HOLMAN AUTOMOTIVE GROUP, INC. and of HOLMAN AUTOMOTIVE, INC.

11

55.     Mr. VYAS described these discriminatory and retaliatory practices to Ms. HOLMAN.  He said that he no longer trusted the HR manager, Jane Garofalo, to treat him fairly.   Mr. VYAS had dealt with Ms. Garofalo in October, 2020, when he complained about the conduct of a female finance manager who was telling other female employees that the Plaintiff is a "scary guy" and implying that he is a "sexual predator."

56.     Ms. Garofalo refused to interview witnesses who would verify that these defamatory remarks were made by the finance manager and would testify that her accusations were not true.  Instead Ms. Garofalo determined that Plaintiff's complaint was "unsubstantiated" and wrote him up claiming that he had made the female finance manager feel "uncomfortable and threatened."

57.     Ms. HOLMAN agreed that Plaintiff should not have to deal with Jane Garofalo any further.   She told Plaintiff to take his complaints directly to Brendon Renouf, the Defendants' Vice President of Global Human Resources at Holman's New Jersey headquarters.

58.     On January 31, 2021, Plaintiff sent an email to Mr. Renouf describing threats of retaliation which had been communicated to him by A.J. Bose and Jeffrey Duecker, and stating that nothing had been done to resolve his complaints of age discrimination.

59.     After Plaintiff brought these issues to the attention of Ms. HOLMAN and Mr. Renouf, Defendants' local managers assured Plaintiff and other senior salesmen in the protected age group that the unfair assignment of sales leads to younger salesmen would not continue.

60.     In spite of these assurances nothing was done to ensure that internet sales leads as well as potential customers who called the dealership by telephone or walked in would be referred to the salesmen on an equitable basis.

61.     A.J. Bose continued to favor younger salesmen by sending them more of the internet sales leads.   The internet sales leads he assigned to the Plaintiff and to others in the protected age group were the less productive ones.   Many of them were inquiries from customers outside the state of Florida who were unlikely to purchase a car at the Pembroke Pines dealership.   Many of the email messages assigning the leads to the Plaintiff show on their face that the car the customer was interested in had already been sold or was unavailable.

62.     In his written complaint to Jeffrey Duecker on June 9, 2022, the Plaintiff stated that the continued threats from Mr. Bose were affecting his health.   On the advice of his doctor, Plaintiff VYAS requested and was approved to take personal time off during the following week, from June 13 through June 17.

63.     It was during that week that he was fired.   Plaintiff stayed home for medical reasons but had to come to the dealership briefly on June 16, 2022, to help complete a sale to one of his customers.   Mr. Duecker called Mr. VYAS into his office. Another manager and a security guard were present.   Mr. Duecker informed the Plaintiff that the local HR representative, Jane Garofalo was on the phone.

64.     Plaintiff declined to talk to Mr. Duecker while Ms. Garofalo was on the speaker phone.   Ms. Garofalo had previously told the Plaintiff that any communications

regarding his complaints to management were only to be handled by and between the respective attorneys for the parties.

65.    The next day, June 17, 2022, Plaintiff received the email from Ms. Garofalo informing him that his employment was terminated.

**COUNT I**
[Age Discrimination, ADEA, 29  U.S.C. §§623(a)(1) and(a) (2)]

66.    Plaintiff restates the allegations of paragraphs 1 through 65, above, as if they were fully set forth in this Count I.

67.    Plaintiff is 71 years of age.   At all times during his employment with Defendants he was 40 years of age or older.

68.    Plaintiff is, and was, fully qualified for the position he held with the Defendants.  He satisfactorily performed the responsibilities of his position at all times.

69.    From February 16, 2022, at times prior thereto and continuing through the present, Defendants discriminated against the Plaintiff, and against others who were and are similarly situated, with respect to the terms, conditions, and privileges of their employment, because of their age.

70.    Defendants did so by and through the acts and omissions of their managers, agents and employees, in the manner set forth in paragraphs 1 through 65, above, in violation of 29  U.S.C. §§623(a)(1) and(a) (2).

71.    On or about June 16, 2022, the Defendants terminated the Plaintiff's employment and discharged him because of Plaintiff's age, in violation of 29 U.S.C. §623(a)(1).

14

72.     Age-based bias was a determinative cause of the Defendants' actions toward the Plaintiff and towards others who were and are similarly situated.

73.     The disparate treatment alleged herein constituted willful discrimination by the Defendants against the Plaintiff and others similarly situated because of their age(s).   Defendants, their managers, agents and employees either knew or showed reckless disregard for whether their conduct was prohibited by the ADEA.

74.     As a direct and proximate result of the Defendants' willful discrimination the Plaintiff and others who were and are similarly situated have suffered damages, including lost wages and other benefits.

75.     Recovery of such amounts and an award of liquidated damages are authorized under 29 U.S.C. §626(b) as is such legal or equitable relief as may be appropriate to effectuate the purposes of the ADEA including without limitation judgments compelling reinstatement and/or promotion.

76.     Plaintiff has retained the undersigned attorney to represent him in this action and has thereby incurred and will incur attorney's fees and costs.   Under 29 U.S.C. §216(b) the court shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the Defendants, and the costs of this action.

WHEREFORE, cause having been shown, Plaintiff asks the Court to enter judgment against the Defendants, jointly and severally, ordering them to reinstate the Plaintiff to his former position, with back pay and benefits and an equal additional amount as liquidated damages, a reasonable attorney's fee and the costs of this action.

Plaintiff further requests the Court to certify this action as a collective action under 29 U.S.C. §216(b) and to grant appropriate relief to those who opt-in as party plaintiffs.

**COUNT II**
[Retaliation, ADEA, 29 U.S.C. §§623(d)]

77.     Plaintiff restates the allegations of paragraphs 1 through 65, above, as if they were fully set forth in this Count II.

78.     From February 16, 2022, at times prior thereto and continuing through the present, Defendants discriminated against the Plaintiff, and against others who were and are similarly situated, with respect to the terms, conditions, and privileges of their employment, because they opposed practices which were made unlawful by 29 U.S.C. §623, in particular practices which discriminated against them because of their ages.

79.     Defendants did so by and through the acts and omissions of their managers, agents and employees, in the manner set forth in paragraphs 30 through 65, above, in violation of 29 U.S.C. §§623(d).

80.     On or about June 16, 2022, the Defendants terminated the Plaintiff's employment and discharged him because he opposed practices which were made unlawful by 29 U.S.C. §623.

81.     These unlawful actions constituted willful discrimination and retaliation by the Defendants against the Plaintiff and others similarly situated.  Defendants, their managers, agents and employees either knew or showed reckless disregard for whether their conduct was prohibited by the ADEA.

16

82.     As a direct and proximate result of the Defendants' willful discrimination the Plaintiff and others who were and are similarly situated have suffered damages, including lost wages and other benefits.

83.     Recovery of such amounts and an award of liquidated damages are authorized under 29 U.S.C. §626(b) as is such legal or equitable relief as may be appropriate to effectuate the purposes of the ADEA including without limitation judgments compelling reinstatement and/or promotion.

84.     Plaintiff has retained the undersigned attorney to represent him in this action and has thereby incurred and will incur attorney's fees and costs.   Under 29 U.S.C. §216(b) the court shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the Defendants, and the costs of this action.

WHEREFORE, cause having been shown, Plaintiff asks the Court to enter judgment against the Defendants, jointly and severally, ordering them to reinstate the Plaintiff to his former position, with back pay and benefits and an equal additional amount as liquidated damages, a reasonable attorney's fee and the costs of this action, and to provide appropriate relief to others who consent to join this action.

## COUNT III
[Age Discrimination, FCRA, §760.10, Florida Statutes]

85.     Plaintiff restates the allegations of paragraphs 1 through 65, above, as if they were fully set forth in this Count III.

86.     Plaintiff is 71 years of age.   At all times during his employment with Defendants he was 40 years of age or older.

17

87.     Plaintiff is, and was, fully qualified for the position he held with the Defendants.  He satisfactorily performed the responsibilities of his position at all times.

88.     From February 16, 2022, at times prior thereto and continuing through the present, Defendants discriminated against the Plaintiff, and against others who were and are similarly situated, with respect to the terms, conditions, and privileges of their employment, because of their age.

89.     Defendants did so by and through the acts and omissions of their managers, agents and employees, in the manner set forth in paragraphs 30 through 65, above, which are unlawful employment practices under §§760.10(a)(1) and (a)(2), Florida Statutes.

90.     On or about June 16, 2022, the Defendants terminated the Plaintiff's employment and discharged him because of Plaintiff's age, in violation of §760.10(a)(1), Florida Statutes.

91.     As a direct and proximate result of the Defendants' willful discrimination the Plaintiff and others who were and are similarly situated have suffered damages, including lost wages and other benefits, mental anguish, loss of dignity, and other intangible injuries, for which the Court may issue an order prohibiting the discriminatory practices and providing affirmative relief from the effects of the practices, including back pay, compensatory and punitive damages under §760.11(5), Florida Statutes.

92.     Plaintiff has retained the undersigned attorney to represent him in this action and has thereby incurred and will incur attorney's fees and costs.     Under

§760.11(5), Florida Statutes, the Court may allow the prevailing party a reasonable attorney's fee as part of the costs.

WHEREFORE, cause having been shown, Plaintiff asks the Court to enter judgment against the Defendants, jointly and severally, ordering them to reinstate the Plaintiff to his former position, with back pay and benefits, compensatory and punitive damages, a reasonable attorney's fee and costs, and to provide appropriate relief to others who consent to join this action..

**COUNT IV**
[Retaliation, FCRA, §760.10, Florida Statutes]

93.    Plaintiff restates the allegations of paragraphs 1 through 65, above, as if they were fully set forth in this Count IV.

94.    From February 16, 2022, at times prior thereto and continuing through the present, Defendants discriminated against the Plaintiff, and against others who were and are similarly situated, with respect to the terms, conditions, and privileges of their employment, because they opposed practices which were made unlawful by §760.10, Florida Statutes, in particular practices which discriminated against them because of their ages.

95.    Defendants did so by and through the acts and omissions of their managers, agents and employees, in the manner set forth in paragraphs 30 through 65, above, in violation of §760.10(7), Florida Statutes,

96.    On or about June 16, 2022, the Defendants terminated the Plaintiff's employment and discharged him because he opposed practices which were made unlawful by §760.10, Florida Statutes.

19

97.     As a direct and proximate result of the Defendants' willful discrimination and retaliation the Plaintiff and others who were and are similarly situated have suffered damages, including lost wages and other benefits, mental anguish, loss of dignity, and other intangible injuries, for which the Court may issue an order prohibiting the discriminatory practices and providing affirmative relief from the effects of the practices, including back pay, compensatory and punitive damages under §760.11(5), Florida Statutes.

98.     Plaintiff has retained the undersigned attorney to represent him in this action and has thereby incurred and will incur attorney's fees and costs.    Under §760.11(5), Florida Statutes, the Court may allow the prevailing party a reasonable attorney's fee as part of the costs.

WHEREFORE, cause having been shown, Plaintiff asks the Court to enter judgment against the Defendants, jointly and severally, ordering them to reinstate the Plaintiff to his former position, with back pay and benefits with back pay, compensatory and punitive damages, a reasonable attorney's fee and costs, and to provide appropriate relief to others who consent to join this action.

**COUNT V**
[Discrimination based on Plaintiff's race, ethnicity and national origin -
Title VII, 42 U.S.C. §2000e, et seq. and FCRA, §760.10, Florida Statutes]

99.     Plaintiff restates the allegations of paragraphs 1 through 65, above, as if they were fully set forth in this Count V.

100.    Plaintiff's race and ethnicity is East Indian.   He was born outside the United States and emigrated to the United States from Great Britain.

101.    Plaintiff is, and was, fully qualified for the position he held with the Defendants.   He satisfactorily performed the responsibilities of his position at all relevant times.

102.    During the period from February 16, 2022, at times prior thereto and continuing through June 16, 2022, Defendants discriminated against the Plaintiff with respect to the terms, conditions, and privileges of his employment, because of his race, ethnicity and national origin.

103.    On or about June 16, 2022, the Defendants terminated the Plaintiff's employment and discharged her because of Plaintiff's race, ethnicity and national origin, in violation of 42 U.S.C. §2000e-2(a) and §760.10(1)(a).

104.    Defendants engaged in unlawful intentional discrimination with malice or with reckless disregard for the federally protected rights of the Plaintiff, within the meaning of 42 U.S.C. §1981a.

105.    As a direct and proximate result, the Plaintiff has suffered damages, including lost wages and other benefits as well as future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, for which compensatory damages may be awarded under 42 U.S.C. §1981a and §760.11(5), Florida Statutes.

106.    Plaintiff has retained the undersigned attorney to represent him in this action and has thereby incurred and will incur attorney's fees and costs.

WHEREFORE, cause having been shown, Plaintiff asks the Court to enter judgment against the Defendants, jointly and severally, ordering them to reinstate the

Law Offices of Donald R. McCoy • 111 SE 12th Street, Fort Lauderdale, FL 33316 • (954) 618-6575

Plaintiff to his former position, with back pay and benefits, with prejudgment interest thereon; to award the Plaintiff additional compensatory damages, punitive damages, a reasonable attorney's fee (including expert fees) and the costs of this action, and for other appropriate relief.

**COUNT VI**
[Discrimination based on Plaintiff's sex - Title VII, 42 U.S.C. §2000e, et seq.
and FCRA, §760.10, Florida Statutes]

107.    Plaintiff restates the allegations of paragraphs 1 through 65, above, as if they were fully set forth in this Count VI.

108.    Plaintiff is, and was, fully qualified for the position he held with the Defendants.   He satisfactorily performed the responsibilities of his position at all relevant times.

109.    During the period from on or about August 24, 2017, through November 1, 2017, the said Defendant, by and through the acts and omissions of its managers, agents and employees, discriminated against the Plaintiff with respect to the terms, conditions, and privileges of his employment, because of Plaintiff's sex (male) in the manner set forth in paragraphs 30 through 65, in violation of 42 U.S.C. § 2000e-2(a) and §760.10(1), Florida Statutes.

110.    On or about June 16, 2022, the Defendants terminated the Plaintiff's employment and discharged him because of Plaintiff's sex (male) in violation of 42 U.S.C. §2000e-2(a) and §760.10(1)(a).

111.    Previously a female finance manager spread false, defamatory accusations against the Plaintiff based upon his gender and implying that he was a sexual predator.

Jane Garofalo, Defendants' Manager and Business Partner/Human Resources refused to properly investigate and, instead issued a counseling report stating that the Plaintiff made the finance manager feel threatened.

112.    Management then directed the Plaintiff to keep his distance from the finance manager.  This restriction interfered with Plaintiff's ability to perform certain of his job responsibilities.

113.    Defendants' subsequent actions were based in whole or in part on an apparent bias against Plaintiff because of his gender.  Defendants engaged in unlawful intentional discrimination with malice or with reckless disregard for the federally protected rights of the Plaintiff, within the meaning of 42 U.S.C. §1981a.

114.    As a direct and proximate result, the Plaintiff has suffered damages, including lost wages and other benefits as well as future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, for which compensatory damages may be awarded under 42 U.S.C. §1981a and §760.11(5), Florida Statutes.

115.    Plaintiff has retained the undersigned attorney to represent him in this action and has thereby incurred and will incur attorney's fees and costs.

WHEREFORE, cause having been shown, Plaintiff asks the Court to enter judgment against the Defendants, jointly and severally, ordering them to reinstate the Plaintiff to his former position, with back pay and benefits, with prejudgment interest thereon; to award the Plaintiff additional compensatory damages, punitive damages, a

reasonable attorney's fee (including expert fees) and the costs of this action, and for other appropriate relief.

## COUNT VII
[Retaliation, Title VII, 42 U.S.C. §2000e-3 and FCRA, §760.10, Florida Statutes]

116.    Plaintiff restates the allegations of paragraphs 1 through 65, above, as if they were fully set forth in this Count VII.

117.    From February 16, 2022, at times prior thereto and continuing through the present, Defendants discriminated against the Plaintiff with respect to the terms, conditions, and privileges of his employment, because he opposed practices which were made unlawful by 42 U.S.C. §2000e-2(a) and §760.10(1), Florida Statutes, in particular practices which discriminated against him because of his race, ethnicity, national origin, and sex.

118.    Defendants did so by and through the acts and omissions of their managers, agents and employees, in the manner set forth in paragraphs 30 through 65, above, in violation of 42 U.S.C. §2000e-3 and §760.10(7), Florida Statutes,

119.    On or about June 16, 2022, the Defendants terminated the Plaintiff's employment and discharged him because he opposed practices which were made unlawful by 42 U.S.C. §2000e-2(a) and §760.10(1), Florida Statutes.

120.    As a direct and proximate result of the Defendants' willful discrimination and retaliation the Plaintiff has suffered damages, including lost wages and other benefits, mental anguish, loss of dignity, and other intangible injuries, for which the Court may issue an order prohibiting the discriminatory practices and providing

24

affirmative relief from the effects of the practices, including back pay, compensatory and punitive damages under §760.11(5), Florida Statutes.

121.    Plaintiff has retained the undersigned attorney to represent him in this action and has thereby incurred and will incur attorney's fees and costs.

WHEREFORE, cause having been shown, Plaintiff asks the Court to enter judgment against the Defendants, jointly and severally, ordering them to reinstate the Plaintiff to his former position, with back pay and benefits, prejudgment interest, compensatory and punitive damages, a reasonable attorney's fee and costs.

## COUNT IX - Hostile Work Environment
[Title VII, 42 U.S.C. §§2000e-2 and 2000e -3 and §760.10, Florida Statutes]

122.    Plaintiff re-states the allegations of paragraphs 1 through 65 as if they were fully set out in this Count IV.

123.    The actions and omissions of Defendants' managers, including without limitation Andrew J. (A.J.) Bose and Jeffrey Duecker, as alleged herein subjected the Plaintiff to unwelcome harassment and a hostile working environment.

124.    The harassment of the Plaintiff was based on the Plaintiff's age, race and ethnicity, his national origin, and his opposition to unlawful employment practices.  The harassment was sufficiently severe or pervasive to alter the Plaintiff's terms and conditions of employment and to create a discriminatorily abusive working environment, in violation of 42 U.S.C. §§2000e - 2(a) and 2000e-3.

125.    The conduct of A.J. Bose and Jeffrey Duecker toward the Plaintiff was physically threatening and humiliating, and unreasonably interfered with the Plaintiff's work performance.

126.   Defendants were responsible, either vicariously or directly, for the hostile environment which constituted unlawful intentional discrimination against the Plaintiff.  The said Defendants, by and through their employees and agents, engaged in such practices with malice and with reckless indifference to the federally protected rights of the Plaintiff.

127   As a direct and proximate result, the Plaintiff has suffered damages, including lost wages and other benefits as well as future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, for which compensatory damages may be awarded under 42 U.S.C. §1981a.

128.   Plaintiff has retained the undersigned attorney to represent him in this action, and has thereby incurred and will incur attorney's fees and costs.

WHEREFORE, cause having been shown, Plaintiff asks the Court to enter judgment against the Defendants, jointly and severally, enjoining such unlawful conduct and to award the Plaintiff additional compensatory damages, punitive damages, a reasonable attorney's fee (including expert fees) and the costs of this action.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through her undersigned counsel, requests a trial by jury as to all of the above Counts I through IX and as to all issues so triable.

26

Respectfully submitted on November 4, 2024.

DONALD R. McCOY, P. A.
111 S.E. 12th Street
Fort Lauderdale, Florida 33316
Telephone: (954) 618-6575
Facsimile: (954) 618-6577
mccoyesquire@me.com


By_____/s/_____
          Donald R. McCoy
          Florida Bar No. 887862

          Attorney for Plaintiff

27